United States District Court
Southern District of Texas
**ENTERED**
August 29, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GRADUATE MEDICAL EDUCATION §
DEVELOPMENT, LLC, §
§
      Plaintiff; §
§
v. §     CIVIL ACTION NO. H-15-2641
§
§
ST. GEORGE'S UNIVERSITY, LTD; §
ST. GEORGE'S UNIVERSITY, LLC; §
ST. GEORGE'S UNIVERSITY §
SCHOOL OF MEDICINE, INC; and §
UNIVERSITY SUPPORT SERVICES, §
LLC, §
§
      Defendants. §

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 25). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below the court **RECOMMENDS** that Defendants' motion be **GRANTED IN PART** and **DENIED IN PART**.

### I.  Case Background

Plaintiff filed this action on September 11, 2015, against Defendants, alleging, inter alia, breach of contract, trade secret misappropriation, quantum meruit, fraud, tortious interference with prospective business relations, and unjust enrichment stemming from a nondisclosure and non-circumvention

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 638(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 29, Order Dated Dec. 1, 2015.

agreement signed between Plaintiff and St. George's University, Ltd. ("SGU Ltd.").[2]

## A.  Factual Background

Defendants operate St. George's University School of Medicine, a for-profit medical school located on the Caribbean island of Grenada.[3] SGU Ltd. is a wholly-owned subsidiary of St. George's University, LLC, ("SGU LLC"), a Delaware limited liability company.[4] After a reorganization completed on August 7, 2014, SGU LLC became, through a series of wholly-owned foreign subsidiaries, owned by St. George's University Group, LP, ("SGU Group"), a Canadian limited partnership.[5]

Because graduates from foreign, for-profit medical schools have a lower chance of matching into accredited residency programs, Defendants, in April 2013, approached Plaintiff, a company that assists non-U.S. medical schools place their unmatched graduates into accredited residency programs, to inquire about their services.[6] Plaintiff claimed that it achieved placements by establishing, financing, and administering

---

[2]    See Doc. 1, Pl.'s Compl.

[3]    See id.

[4]    See Doc. 56, Ex. 5 to Pl.'s Suppl. Resp., Letter from Charles Adams to Laura King Dated May 15, 2014.

[5]    See id.

[6]    See Doc. 1, Pl.'s Compl.

"Residency Collaboratives" with U.S.-based healthcare centers.[7] Defendants inquired about establishing "Residency Collaboratives" to provide residency placements for their unmatched graduates and about the recruitment of qualified students from Asia and the Middle East.[8]

Prior to Plaintiff's sharing its information about its methods and contacts for Defendants' evaluation, Plaintiff and SGU Ltd. executed a Nondisclosure and Non-Circumvention Agreement ("NDA") on June 11, 2013.[9]   Charles Adams, as General Counsel of SGU Ltd., signed the NDA and entered its address as University Centre, Grenada, West Indies, the address of SGU Ltd.[10]   The NDA prohibited SGU Ltd. from, inter alia: (1) using the confidential information provided to them for any purpose other than evaluating Plaintiff's proposals; (2) engaging in the matters contained within the proposals put forth by Plaintiff without Plaintiff's direct participation; and (3) conducting businesses with the organizations that Plaintiff introduced to SGU Ltd. without Plaintiff's participation.[11]

---

[7]     See id.

[8]     See id.

[9]     See id.

[10]    See Doc. 1-1, Ex. A to Pl.'s Compl., Nondisclosure and Non-Circumvention Agreement; Doc. 34, Ex. B to Decl. of R. Ellis, Appl. for Federal Fin. Aid, p. 3.

[11]    See Doc. 1-1, Ex. A to Pl.'s Compl., Nondisclosure and Non-Circumvention Agreement.

Although the only signatories to the NDA were Plaintiff and SGU Ltd., the NDA also purported to bind the affiliates of a signatory to the NDA by containing the following clause: "The Recipient and the Recipient's Representatives shall use Confidential Information only for the Purpose."[12]   The NDA defined "Representatives" as including "directors, officers, employees and agents of such party and any affiliated companies of that party."[13]   The NDA also included a forum selection clause, which designated the "federal and state courts in and for Harris County, Texas with respect to any cause of action arising out of or relating to this agreement."[14]

According to Plaintiff's complaint, for approximately a year and a half, Plaintiff shared its proprietary business methods and contacts with Defendants.[15]   In March 2014, Plaintiff's arranged for Saudi Arabian education officials to travel to meet with Defendants in person regarding a potential recruitment deal.[16] Defendants communicated their interest in recruiting in the area and represented that they were committed to the potential recruitment deal.[17]   Despite these assurances, Defendants refused

---

[12]   Id.

[13]   Id.

[14]   See id.

[15]   See Doc. 1, Pl.'s Compl. p. 11.

[16]   See id.

[17]   See id. p. 12.

to meet with Saudi representatives after the representatives had traveled across the world to attend the meeting, ignoring Plaintiff's attempts to postpone or cancel the meeting.[18]   As a result, Plaintiff alleged that its relationship with Saudi Arabian officials was damaged.[19]

On March 17, 2014, Defendants called Plaintiff and informed them that Defendants wished to explore and establish residency collaborations with other parties.[20]   Plaintiff alleged that Defendants subsequently violated the terms of the NDA by seeking a residency collaboration with Long Island Community Hospital.[21] Plaintiff also alleged that Defendants used Plaintiff's confidential information to secure a $750 million investment from Canadian and Chinese private equity firms, which was part of Defendants' 2014 reorganization.[22]    Plaintiff alleged that Defendants have employed Plaintiff's recruitment methods in violation of the NDA.[23]

**B.  Procedural History**

On September 11, 2015, Plaintiff filed this cause of action against SGU Ltd., SGU LLC, St. George's University School of

---

[18]     See id.

[19]     See id. pp. 12-13.

[20]     See id.

[21]     See id.

[22]     See id.

[23]     See id.

Medicine, Inc. ("SGU Inc."), and University Support Services ("USS"), all affiliates of SGU Ltd.[24] On November 20, 2015, Defendants filed a motion to dismiss based on (1) lack of personal jurisdiction over the non-signatories to the NDA; and (2) failure to state a claim.[25] Plaintiff subsequently filed a response to Defendants' Motion to Dismiss on December 11, 2015 regarding Defendants' personal jurisdiction argument ("12(b)(2) Response").[26] In Plaintiff's 12(b)(2) Response, Plaintiff requested that the court allow jurisdictional discovery if the court found merit to Defendants' personal jurisdiction argument.[27] On the same day, Plaintiff also filed a separate response to Defendants' argument that Plaintiff failed to state a claim ("12(b)(6) Response").[28] Defendants then jointly replied to each of Plaintiff's responses on December 16, 2015.[29]

On January 21, 2016, the court granted Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery.[30] After jurisdictional discovery, Plaintiff filed a supplemental response

---

[24]   See id.; Doc. 34, Ex. A to Decl. of R. Ellis, 2009 Financial Statements Dated Dec. 23, 2009.

[25]   See Doc. 25, Def.'s Mot. to Dismiss.

[26]   See Doc. 30, Pl.'s Resp. to Def.'s Mot. to Dismiss Under 12(b)(2).

[27]   See id.

[28]   See Doc. 32, Pl.'s Resp. to Def.'s Mot. to Dismiss Under 12(b)(6) Dated Dec. 11, 2015.

[29]   See Doc. 39, Def.'s Reply to Pl.'s Resp.; Doc. 40, Def.'s Reply to Pl.'s Resp..

[30]   See Doc. 48, Order Dated Jan. 21, 2016.

in opposition to Defendants' personal jurisdiction argument.[31]
Defendants subsequently filed a supplemental reply in support of
their motion to dismiss on personal jurisdiction grounds on July
8, 2016.[32]

Now, the court is tasked with determining whether: (1)
Plaintiff has failed, even after jurisdictional discovery, to
establish this court's personal jurisdiction over the non-
signatory defendants; and (2) Plaintiff has failed to state a
claim upon which relief can be granted.

## II.  Legal Standards

## A.  Dismissal for Lack of Personal Jurisdiction

### 1.  Minimum Contacts

Federal Rules of Civil Procedure ("Rule") 12(b) authorizes a
court to dismiss an action against a defendant when the court
lacks personal jurisdiction over that defendant.  See Fed. R.
Civ. P. 12(b)(2).  On a motion to dismiss decided without benefit
of an evidentiary hearing, the burden is on the plaintiff to
establish a prima facie case in support of jurisdiction.
Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th
Cir. 2008).

The district court may receive "any combination of
recognized methods of discovery," including affidavits,

---

[31]    See Doc. 55, Pl.'s Suppl. Resp. Dated June 20, 2016.

[32]    See Doc. 60, Def.'s Suppl. Reply Dated July 8, 2016.

interrogatories, and depositions to assist it in the jurisdictional analysis. Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 241 (5th Cir. 2008)(quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). The court resolves all conflicts in evidence in favor of the plaintiff and accepts as true all of the plaintiff's uncontroverted allegations. Johnston, 523 F.3d at 609.

A federal court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers jurisdiction and (2) if jurisdiction is consistent with due process under the United States Constitution. Id. In Texas, the long-arm statute permits personal jurisdiction to the full extent allowed by the Due Process Clause. Id. Thus, the two-step inquiry "collapses into one federal due process analysis." Mullins v. Test America Inc., 564 F.3d 386, 398 (5th Cir. 2009)(quoting Johnston, 523 F.3d at 609). The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when:

> (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."

Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999)(quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

A defendant establishes minimum contacts with a state when his "conduct and connection" with that state are significant enough that the defendant "should reasonably anticipate being haled into court" in that state.  Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 379 (5th Cir. 2002)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  The defendant must "purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Nuovo Pignone, SpA, 310 F.3d at 379 (quoting Burger King Corp., 471 U.S. at 475).

"[C]ontinuous and systematic general business contacts" are grounds for the exercise of general jurisdiction over a nonresident defendant for any cause of action regardless of whether the claim arose from specific activity within the forum.  Luv n' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006)(quoting Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 n.9 415 (1984))  In order to support a showing of general jurisdiction, a defendant's "continuous corporate operations within [the forum state]" must be "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  Intermoor Inc., v. Wilson, No. 4:14-CV-01392, 2016 WL 1107083, at *3 (S.D. Tex. Mar. 22, 2016)(slip copy)(quoting Daimler AG v. Bauman, 134 S.Ct. 746, 754 (2014)).  Specific

jurisdiction, on the other hand, may arise when a non-resident defendant "purposefully direct[s] its activities at the forum state" and the cause of action results from "alleged injuries that arise out of or relate to those activities." <u>Intermoor Inc.</u>, 2016 WL 1107083, at *3 (quoting <u>Alpine View Co. Ltd. v. Atlas Copco AB</u>, 205 F.3d 208, 215 (5th Cir. 2000)).

Upon a showing of sufficient minimum contacts, the court then considers the second prong of the personal jurisdiction analysis—whether personal jurisdiction comports with "traditional notions of fair play and substantial justice." <u>Ruston Gas Turbines, Inc. v. Donaldson Co.</u>, 9 F.3d 415, 421 (5th Cir. 1993)(quoting <u>Int'l Shoe</u>, 326 U.S. at 316).   In its determination of fair play and substantial justice, the court looks at the following non-exhaustive list of factors:

> (1) the burden on the defendant; (2) the forum [s]tate's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several [s]tates in furthering fundamental substantive social policies.

<u>Special Indus., Inc. v. Zamil Grp. Holding Co.</u>, 578 F.App'x 325, 328 (5th Cir. 2014)(unpublished)(quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980)).

## 2.  The Imputation of Contacts

In determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts, courts presume the independence of related corporations. See generally Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333 (1925). This presumption of corporate separateness may be overcome by clear evidence that one corporate entity exerts sufficient control over the other to make it an agent or alter ego, and thus, the court will "fuse the two together for jurisdictional purposes." Freudensprung v. Offshore Tech. Servs., 379 F.3d 327, 346 (5th Cir. 2004)(quoting Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1160 (5th Cir. 1983)). Therefore, a court may look beyond a corporation's lack of direct contacts with the forum and exercise personal jurisdiction over an alter ego of a corporation that is subject to the court's jurisdiction. See Jackson v. Tanfoglio Giusseppee, S.R.I., 615 F.3d 579, 586 (5th Cir. 2010).

In determining whether an entity is an alter ego or a single business enterprise, courts generally consider whether:

> (1) distinct and adequately capitalized financial units are incorporated and maintained; (2) daily operations of the two corporations are separate; (3) formal barriers between management of the two entities are erected, with each functioning in its own best interests; and (4) those with whom the corporations come in contact are apprised of their separate identity. Other factors deemed important are: (1) common stock ownership; (2) the method and degree of financing of the subsidiary by the parent; (3) common directors or officers; (4) separate books and accounts; (5) common business departments; (6) extent to which contracts between parent and subsidiary favor one over

the other; and (7) connection of parent's employee . . . to subsidiary's tort or contract giving rise to suit.

Hargrave, 710 F.2d at 1162-63 (quoting Miles v. Am. Tel. & Tel. Co., 703 F.2d 193, 195-96 (5th Cir. 1983))(applying Texas law). Even in the realm of alter ego allegations, only a prima facie showing is necessary at the preliminary 12(b)(2) stage.   See Hargrave, 710 F.2d at 1161 (noting that the standard for alter ego jurisdiction is less stringent than that for alter ego liability).

## B.   Dismissal for Failure to State a Claim Under Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.   When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.   Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 678.

### III. Analysis

Defendants moved to dismiss based on both personal jurisdiction and failure to state a claim.  The court discusses each of these grounds in turn.

### A.  Personal Jurisdiction

Plaintiff attempts to impute the contacts between SGU Ltd., the signatory to the NDA, and Texas, the forum state, to the non-signatory defendants, SGU LLC, SGU Inc., and USS, using a myriad of legal theories.  Plaintiff's best developed theory is the alter ego theory.  The court begins and ends there.[33]

### 1.  Personal Jurisdiction Facts: Relationship Between Entities

In order for the court to discuss the imputation of contacts from SGU Ltd. to the non-signatories, the court must explore the relationship between the affiliated entities vis-à-vis the Hargrave factors.

---

[33]   The court need not make a determination whether it can exercise personal jurisdiction under any of Plaintiff's other theories because it determines it can exercise personal jurisdiction based on the alter ego theory.

One <u>Hargrave</u> factor involves the commonality of officers. 710 F.2d at 1162-63.  Defendants share multiple officers amongst the different entities.  For example, Charles Modica serves on the board of directors and is the chancellor for SGU Ltd., holds a majority of the economic interest in SGU LLC, and serves on the board of directors of SGU Inc.[34]  Patrick Adams was on the SGU Ltd. board of directors until April 1, 2015, and serves on the boards of directors of SGU LLC and SGU Inc.[35]  Charles Adams is Executive Vice President and General Counsel to SGU Ltd., USS, and SGU LLC and is also General Counsel to SGU Inc.[36] Defendants' responses to Plaintiff's interrogatories show that four officers, Charles Adams, Brian Zwarych, Lori Lifson-Arloff, and Jonathan K. Rogers, have assisted each Defendant in their responses to their separate interrogatories.[37]

Another <u>Hargrave</u> factor discusses the daily operations of the entities and whether the business departments are integrated. <u>Id.</u>  SGU LLC's principal business activity is to serve as the holding company for SGU Ltd. after the 2014 restructuring.[38]  USS has a service agreement with SGU Ltd. whereby it provides

---

[34]     <u>See</u> Doc. 56, Pl.'s Suppl. Resp. Dated June 20, 2016.

[35]     <u>See</u> <u>id.</u>

[36]     <u>See</u> <u>id.</u>

[37]     <u>See</u> Doc. 56, Exs. 1, 2, 3, & 4 to Pl.'s Redacted Suppl. Resp., Pl.'s Interrog.s Dated Mar. 7, 2016.

[38]     <u>See</u> Doc. 55-2, Ex. 2 to Pl.'s Supp. Resp., Pl.'s Interrog. to SGU LLC, p. 10 Dated Mar. 7, 2016.

financial services, corporate finance and strategic planning, recruitment and admissions, compiles government-mandated filings, provides administrative and accounting services, financial aid services, registrar services, educational research and development, student health insurance services, student placement services, information technology services, and property management services, among others.[39]   USS declares in its response to Interrogatory Number 5 that its principal activity is providing services by agreement to "SGU, Ltd. and its various schools."[40]   SGU Inc.'s principal business activity is providing services under a Services Agreement to SGU Ltd., which includes making payments on behalf of SGU, Ltd. to vendors, made from USS's offices in New York.[41]   In sum, USS and SGU Inc.'s daily operations are to assist SGU Ltd. in its daily operations, thus functioning under the management of university officials.

In addition, the business addresses of the entities are identical.   SGU Ltd.'s address, according to its website's "contact us" section, lists both the Grenada address that was used on the NDA as well as an alternative address of "c/o USS

---

[39]    See Doc. 56, Ex. 13 to Pl.'s Supp. Resp., Services Agreement Dated Jan. 1, 2007.

[40]    See id.

[41]    See Doc. 55-4, Ex. 4 to Pl.'s Supp. Resp., Pl.'s Interrog. to SGU Inc. Dated Mar. 7, 2016.

LLC" in Great River, New York.[42]  SGU LLC's address, according to its Application for Approval to Participate in Federal Student Financial Aid Programs to the U.S. Department of Education, is "c/o USS" and uses the same Great River, New York address as SGU Ltd.[43]  USS's address is 3500 Sunrise Highway, Building 300, Great River, New York.[44]  This is the same address that is listed for SGU Ltd. and SGU LLC.  Finally, SGU Inc. uses Patrick Adam's Naples, Florida residential condominium as its mailing address.[45]

Defendants admit in their responses to Plaintiff's interrogatories that they "might fairly be considered affiliates," and it is undisputed that they file consolidated financial statements.[46]  Accordingly, there are no separate books and accounts.

## 2.  Personal Jurisdiction Analysis

Defendants do not contest that the court has personal jurisdiction over SGU Ltd.  So, the court considers only whether it has personal jurisdiction over the non-signatory defendants.

---

[42]    See Doc. 55-10, Ex. 19 to Pl.'s Supp. Resp., Website Screenshot Dated June 20, 2016.

[43]    See Doc. 56, Ex. 7 to Pl.'s Supp. Resp., Appl. for Federal Financial Aid Dated Mar. 31, 2014.

[44]    See Doc. 55-3, Ex. 3 to Pl.'s Supp. Resp., Pl.'s Interrog. to USS Dated Mar. 7, 2016 .

[45]    See Doc. 55-4, Ex. 4 to Pl.'s Supp. Resp., Pl.'s Interrog. to SGU, Inc. Dated Mar. 7, 2016 .

[46]    See Doc. 55, Ex. 1 to Pl.'s Redacted Suppl. Resp., Pl.'s Interrog. to SGU Ltd. Dated March 7, 2016; Doc. 56, Ex. 12 to Pl.'s Suppl. Resp., Financial Statements Dated Sept. 30, 2015.

In the case at hand, the evidence presented to the court by Plaintiff is sufficient to establish an alter ego relationship between SGU Ltd. and the non-signatory defendants. Defendants' responses to Plaintiff's interrogatories show that four officers, Charles Adams, Brian Zwarych, Lori Lifson-Arloff, and Jonathan K. Rogers, have assisted each defendant in responding to the interrogatories. In addition, there is a commonality of officers between SGU Ltd. and each of the non-signatory defendants.

Regarding ownership, SGU Ltd. is wholly-owned by SGU LLC. Furthermore, after the 2014 restructuring, SGU LLC became, through a series of wholly-owned foreign subsidiaries, owned by SGU Group, which is in turn forty-percent owned by, inter alia, Charles Modica, Patrick Adams, and Charles Adams, the NDA signatory on behalf of SGU Ltd.

Defendants have not rebutted any of the information provided by Plaintiff in its interrogatories and findings during jurisdictional discovery. In fact, by pointing out that the non-signatories (SGU, LLC; SGU Inc.; and USS) have not signed the NDA, Defendants concede that the court has personal jurisdiction over SGU Ltd.[47] The court determines that, due to the presence of one-hundred-percent ownership in addition to commonality of officers and mailing addresses and the filing of consolidated financial statements, Plaintiff has made a prima facie case to

---

[47]    See Doc. 25, Def.'s Mot. to Dismiss p. 11.

support alter ego jurisdiction. Because Defendants have failed to respond to these findings by Plaintiff, the court accepts as true all uncontroverted allegations. <u>Johnston</u>, 523 F.3d at 609. Thus, the court imputes the contacts between Texas and SGU Ltd. to the non-signatory defendants for jurisdictional purposes.

Next, the court must examine whether Defendants have sufficient minimum contacts with Texas.  In the case at hand, Defendants purposefully directed their activity with Texas by entering into the NDA with Plaintiff.  Because this cause of action arises out of Defendants' activity within the forum state via the NDA, the court finds that it has specific jurisdiction over Defendants.

The court must next analyze whether its exercise of personal jurisdiction over Defendants comports with "traditional notions of fair play and substantial justice." <u>Ruston</u>, 9 F.3d at 421. The court analyzes this prong via the <u>Volkswagen</u> reasonableness factors. <u>Special Indus., Inc.</u>, 578 F.App'x at 328.  Here, the parties agreed to a forum selection clause in Harris County, Texas.  Texas also has an interest in protecting the trade secrets of Plaintiff, a Texas corporation, and Texas is a convenient forum because Plaintiff conducts business in Texas. Thus, the court finds that it has specific personal jurisdiction over Defendants by imputing the contact between SGU Ltd. and Plaintiff to the non-signatories via an alter-ego theory, and its

exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

## B.  Failure to State a Claim

Defendants also move to dismiss each of Plaintiff's claims for failure to state a plausible claim for relief.  The court considers Defendants arguments in turn.

### 1.  Breach of Contract

Defendants move to dismiss Plaintiff's breach of contract claims on two grounds.  First, they argue that Plaintiff cannot establish the existence of a contract with respect to the non-signatory defendants.  Second, Defendants argue that the contract does not specify any confidential information so Plaintiff cannot allege a breach.

The court is not convinced by Defendants' argument that Plaintiff may not retain a breach of contract claim against non-signatories.  As discussed above, Plaintiff has made a prima facie case that the non-signatory defendants are alter egos of SGU Ltd.  The Supreme Court has noted that a contract may be enforced against nonparties through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." Arthur Anderson LLP v. Carlisle, 556 U.S. 624, 631 (2009).  Plaintiff additionally notes that the NDA bound "any affiliated companies"

of SGU Ltd.  Plaintiff has stated a claim for breach against the non-signatory defendants.

Defendants additionally argue that Plaintiff cannot maintain a breach of contract claim because the non-disclosure agreement did not define what information was confidential.  Defendants argue that a listing of products or services included in "Exhibit A" was to define confidential information, and because it was not included with the contract, that there cannot be confidential information to disclose.  The court does not agree.  The same paragraph states that "[c]onfidential [i]nformation shall include, but not be limited to . . . ideas, plans, designs, processes, specifications, computer programs, business plans, financial or marketing plans, or other materials . . . ."[48] Plaintiff has properly alleged that there was confidential information protected by the NDA and that Defendants breached the agreement.

Plaintiff further alleges that Defendants breached the NDA by disclosing confidential information and by implementing Plaintiff's system without its approval to recruit students. Plaintiff has stated a claim for relief on its breach of contract claims.

**2.  Quantum Meruit and Unjust Enrichment**

---

[48]    See Doc. 1-1, Ex. A to Pl.'s Compl., Nondisclosure and Non-Circumvention Agreement p. 2.

Defendants argue that Plaintiff's claims under quantum meruit and unjust enrichment should be dismissed under Texas' express-contract bar. Plaintiff responds that it is entitled to plead in the alternative if a fact-finder ultimately determines that the NDA did not apply to all defendants.

A plaintiff may recover under quantum meruit if it can prove: (1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged; and (4) under such circumstances that put the person sought to be charged on notice that the plaintiff expected to be paid. Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990). A plaintiff may recover based on unjust enrichment when one party has obtained a benefit through fraud, duress, or taking undue advantage of another party. Heldenfels Bros. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992).

Here, Plaintiff alleged that Defendants gained the benefit of Plaintiff's methodologies and unjustly obtained partnerships with foreign investors as a result. The express-contract rule prevents double recovery; a plaintiff is free to plead alternative causes of actions. See Truly v. Austin, 744 S.W.2d 934, 936 (Tex. 1988) (holding that a party could not recover under breach of contract and quantum meruit theories); see also

Pension Advisory Group, Ltd. v. County Life Ins., 771 F. Supp. 2d
680, 704 n.5 (S.D. Tex. 2011) (holding that quantum meruit and
unjust enrichment claims could be made in the alternative).
Plaintiff also notes that Defendants have challenged whether the
NDA applies to the non-signatory defendants.   Plaintiff has
stated a claim in the alternative under quantum meruit and unjust
enrichment at this time.

### 3. Trade Secret Misappropriation

Defendants argue that Plaintiff has not pleaded a trade
secret misappropriation claim because it has not pleaded that it
owns a trade secret or that it was misappropriated.   Plaintiff
responds that it has properly stated a claim for trade secret
misappropriation.

A plaintiff establishes a trade secret misappropriation
claim by pleading that: "(1) a trade secret existed; (2) the
trade secret was acquired through a breach of a confidential
relationship or discovered by improper means; and (3) use of the
trade secret without authorization from the plaintiff."
Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 875 (5th Cir.
2013).   A trade secret is "any formula, pattern, device, or
compilation of information which is used in one's business and
presents an opportunity to obtain an advantage over competitors
who do not know or use it."   In re Bass, 113 S.W.3d 735, 739

(Tex. 2003).   To determine whether a trade secret exists, the court considers six factors:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Id. at 739-40.

Defendants argue that Plaintiff's "student recruitment methodologies" are not trade secrets because they are not presented with enough specificity to determine what is claimed to be a secret.   They additionally argue that Plaintiff has not pleaded that Defendants acquired any trade secrets by improper means.   Plaintiff responds that it has sufficiently pleaded the elements of a trade secret misappropriation claim.

Defendants rely on a recent case that found a breach of contract claim did not allege acquiring knowledge through improper means under the Texas Uniform Trade Secrets Act.   See Educ. Mgmt. Servs., LLC v. Tracey, 102 F. Supp. 3d 906, 914 (W.D. Tex. 2015).   In Tracey, the plaintiff entered into an agreement with defendant, and after the agreement was terminated, alleged that defendant had disclosed trade secrets.   Id. at 908-09.   The court in that case found that the plaintiff did not allege that a

trade secret was gained through improper means.  The act defines improper means as a "breach or inducement of a breach of a duty to maintain secrecy" of a trade secret and that misappropriation includes "disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret."  Tex. Civ. Prac. & Rem. Code § 134A.002(2), (3)(B)(i).  Here, Plaintiff alleges that Defendants breached its duty to maintain secrecy by violating the NDA.  Plaintiff has therefore alleged that Defendants gained information by improper means.

The court finds that Plaintiff has sufficiently pleaded that it has a protectible trade secret.  Plaintiff has alleged that it has methodologies for developing relationships that it has protected, that it shared with SGU Ltd. following the signing of a NDA, and that Defendants later breached a confidential relationship and disclosed its protected methodologies.  The court finds that Plaintiff need not explain its methodology to assert that a trade secret exists.  Plaintiff has sufficiently alleged that Defendants acquired its trade secret through a violation of a confidential relationship.

### 4. Tortious Interference

Defendants next argue that Plaintiff's tortious interference with prospective business relationships must be dismissed because Plaintiff has not pleaded independently tortious activity and

24

because Plaintiff fails to allege requisite intent or knowledge.
Plaintiff responds that it has sufficiently pleaded its claim.

To claim a tortious interference with prospective business
relationships, a plaintiff must establish that:

> (1) there was a reasonable probability that the
> plaintiff would have entered into a business
> relationship with a third party; (2) the defendant
> either acted with a conscious desire to prevent the
> relationship from occurring or knew the interference
> was certain or substantially certain to occur as a
> result of the conduct; (3) the defendant's conduct was
> independently tortious or unlawful; (4) the
> interference proximately caused the plaintiff injury;
> and (5) the plaintiff suffered actual damage or loss as
> a result.

Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923
(Tex. 2013).

Here, Plaintiff alleges that it arranged a meeting between
Saudi Arabian education officials and Defendants and informed
Defendants repeatedly regarding the importance of the meeting.
Plaintiff alleges that Defendants refused to meet with Saudi
officials after the officials had flown across the world and
ignored communications from Plaintiff questioning whether
Defendants were still interested and whether the meeting should
be canceled or postponed. Defendants did not attend the meeting,
and Plaintiff was damaged when the Saudi officials chose to
contract with a competitor in September 2014.

Defendants argue that failing to attend a business meeting
cannot be intentional or wrongful conduct. However, Plaintiff

does not merely allege that Defendants did not attend a meeting: they allege that Defendants repeatedly expressed interest in the meeting and the joint recruitment project, and waited until after officials flew in from Saudi Arabia before refusing to meet with them.  Plaintiff has alleged intentional conduct.  With respect to Defendants' intent or knowledge, Plaintiff has alleged that Defendants knew of the meeting and deliberately did not attend in order to damage Plaintiff.  Plaintiff has sufficiently pleaded a plausible cause of action for tortious interference with a prospective business relationship.

### 5.  Fraud

Defendants also argue that Plaintiff has not stated a claim for fraud because they have not met the heightened pleading requirements for fraud claims.  Plaintiff responds that they have stated a plausible clean with the required particularity.

To state a claim for fraud, a plaintiff must allege with particularity: "(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, LP, 620 F.3d 465, 468 (5th Cir.2010). Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud."  The Fifth Circuit requires that the complaint specify what statements were

fraudulent, who made them, when and where they were made, and why they were fraudulent. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008)(stating also that, simply put, fraud pleadings must contain "'the who, what, when, where, and how' of events at issue"). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead fraudulent intent, a plaintiff must set forth specific facts supporting an inference of fraud. Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994).

Plaintiff bases its fraud allegations on several discrete actions: Defendants' initial representations that they would not disclose confidential information, Defendants' representatives requesting detailed information regarding Plaintiff's methodologies to evaluate an ongoing business relationship, admitting that Defendants were soliciting business without Plaintiff, and Defendants' representatives' statements about interest in expanding into Saudi Arabia and interest in meeting with Saudi officials. Defendants argue that none of these claims meet the requirements of Rule 9(b). Defendants argues that the statements made in the complaint were true, and that even if they were not true, they were not material representations.

Defendants are correct that their statements regarding learning more about Plaintiff's methodologies and stating that they were already moving forward without Plaintiff were not

fraudulent, as, taking Plaintiff's complaint as true, both were true statements. Plaintiff has not pleaded that Defendants entered the NDA with an expectation of breach; based on Plaintiff's complaint, Defendants did not breach the agreement for over a year.

Defendants argue that their representative's statement regarding interest in Saudi Arabia cannot be a misrepresentation because it was true. However, Plaintiff included that statement, along with mentioning that Defendants gave "repeated assurances" in their interest in meeting with Saudi officials, in contrast with Defendants' actions in refusing to meet with officials. Plaintiff has alleged that Defendants misrepresented their interest in meeting with the officials, and that, they knew the statements were false at the time they were made, with the intention of damaging Plaintiff's relationship with the Saudi officials, thus causing injury. See Rio Grande Royalty Co., 620 F.3d at 468. Plaintiff has therefore made a fraud claim that is plausible on its face.

### 6. Conspiracy

Defendants argue that Plaintiff fails to state a plausible claim for civil conspiracy because there is no pleading that an agreement existed between corporate Defendants. Plaintiff responds generally that its complaint discusses Defendants corporate forms sufficiently to allege a conspiracy claim.

The elements of a civil conspiracy claim in Texas are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005). Rule 9(b)'s heightened standard applies to claims for conspiracy to commit fraud. U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 193 (5th Cir. 2009).

Plaintiff's current pleading refers to Defendants collectively as "SGU Defendants" and alleges all actions against Defendants interchangeably. Plaintiff alleges sufficient facts to suggest that Defendants were acting in concert.

Therefore, the claim should not be dismissed at this stage in the proceeding.

### 7. Aiding and Abetting

Defendants move to dismiss Plaintiff's claim for aiding and abetting. Plaintiff responds that the complaint contains facts sufficient to state a plausible claim for relief.

Aiding and abetting tortious conduct is a secondary liability claim available in certain limited jurisdictions. See In re Enron Corp. Secs., 465 F. Supp.2d 687, 725-28 (discussing aiding and abetting fraud under Ohio law); Demott v. LM Ins. Corp., 2014 WL 3673037, *3 (N.D. Tex. Jun. 24, 2014) (recognizing that Arizona law recognizes aiding and abetting tort claims). The

Supreme Court of Texas has not recognized an independent "aiding and abetting" fraud claim independent from a conspiracy claim. See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 583 n. 7 (Tex. 2001); see also Juhl v. Airington, 936 S.W.2d 640, 644 (Tex. 1996) (recognizing that Texas had not adopted Section 876 of the Restatement of Torts).

Even if Texas had adopted an aiding and abetting tortious conduct claim, it would not apply here.  In states recognizing aiding and abetting as a secondary tort, a plaintiff must prove: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." Demott v. LM Ins. Corp., 2014 WL 3673037, *4 (N.D. Tex. July 24, 2014) (quoting Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund, 201 Ariz. 474, 485 (2002)). Plaintiff has not alleged that the non-signatory defendants "substantially assisted" SGU Ltd.

The court accordingly **RECOMMENDS** that Plaintiff's aiding and abetting claim be **DISMISSED**.

### 8.  Other Claims

Defendant moves to dismiss all of Plaintiff's remaining claims, including attorneys' fees, exemplary damages, vicarious

liability, and piercing the corporate veil.  Because Defendants predicate these claims on Plaintiff's inability to plausibly claim alter ego, fraud, or trade secret misappropriation, the court **RECOMMENDS** that these claims be **DENIED** at this time.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 29th day of August, 2016.

U.S. MAGISTRATE JUDGE