# EXHIBIT A

# NONDISCLOSURE AND NON-CIRCUMVENTION AGREEMENT

This Nondisclosure and Non-Circumvention Agreement ("Agreement") is entered into as of June 11, 2013 (the "Effective Date"), by and between GRADUATE MEDICAL EDUCATION DEVELOPMENT, LLC, 5001 Woodway Drive, #705, Houston, Texas 77056 ("GMED"), and SAINT GEORGE'S UNIVERSITY LIMITED, whose place of business is set forth on the signature page below ("SGU"). Collectively, GMED and SGU may be referred to as the "parties" or individually, either may be referred to as the "Disclosing Party" or the "Recipient."

WHEREAS, the parties contemplate entering into business and/or technical discussions relating to a business proposal to be made by GMED to SGU;

WHEREAS, in furtherance of these discussions, it may be necessary or desirable for each party to disclose to the other certain confidential and proprietary business and/or technical information in order to enable discussions to freely take place between them concerning the subject matter referenced above;

WHEREAS, GMED has developed various strategic proprietary methodologies (collectively the "Methodologies") which it shall present to SGU in a separate proposal (the "Proposal") which will assist SGU in (i) placing its medical students into Accreditation Council for Graduate Medical Education (A.C.G.M.E) accredited medical residency programs / post-MD medical training programs and creating A.C.G.M.E. accredited accredited medical residency program / post-MD medical training programs (ii) causing a collaboration to be created with certain Middle Eastern affiliates and SGU under which such Middle Eastern affiliates will provide potential students the funds for university student tuition at SGU's school, including but not limited to its school of medicine, school of Public Health and Preventive Medicine (DPHPM) and school of Business Administration;

WHEREAS, it is anticipated that the parties may disclose or deliver to the other and its Representatives (Representatives being defined below) certain information which is proprietary and confidential in nature for the purpose of enabling each party to evaluate whether it desires to participate in the subject matter of the Proposal (the "Purpose");

THEREFORE the parties agree as follows

1.  (a)  As used herein, "Confidential Information" refers to any and all written, visual, or oral information relating to the design, manufacture, testing, evaluation, marketing, sale and other provision or use of those products and/or services of GMED listed in Exhibit A hereto and related products, technology, media and marketing processes and services which is

proprietary and confidential to GMED and/or any affiliated companies and is hereafter provided to SGU for the Purpose by GMED or its Representatives. Confidential Information shall include, but not be limited to, names of GMED's contacts at various governmental and non-governmental institutions and Federally Qualified Health Centers, data, notes, analyses, compilations, studies, interpretations, know-how, licenses, intellectual property, ideas, plans, designs, processes, specifications, computer programs, business plans, financial or marketing plans, or other materials, whether furnished or received before or after the date of this Agreement, and in whatever form or medium provided or received, as well as all information generated by SGU that contains or reflects received information in whole or in part. Failure to mark written or other material so as to indicate the confidential nature of such information shall not affect the confidential nature of any Confidential Information included in that material.

(b) SGU has developed a unique and distinguished educational administration, marketing, tactical and strategic goals, proprietary information, systems, techniques, data, operations, plans and procedures and has hired key personnel to administer such programs. All information provided to GMED by SGU pursuant to, and concerning the Purpose will be deemed confidential information and will remain such for the term of this Agreement with the exception of information which (i) is or becomes generally available to the public other than as a result of a disclosure by GMED, (ii) is or becomes available to GMED on a non-confidential basis from a source other than SGU, provided that such source is not known after specific inquiry by GMED to be bound by a confidentiality agreement with or other obligation of secrecy to SGU or, (iii) was independently developed by GMED without reference to or use of the confidential information and such information was disclosed to SGU. During this period, GMED will use the same measures that it uses to protect its own like confidential information, but in no event less than a reasonable standard of care to protect and maintain the confidentiality of such SGU confidential information. GMED agrees to treat information encompassed by the Family Educational Rights and Privacy Act (FERPA) in accordance with FERPA.

(c) "Confidential Information" shall not include information, if any, which the Recipient establishes by clear and convincing documentary evidence (i) is or becomes generally available to the public other than as a result of disclosure by Recipient or its Representatives, (ii) is known to Recipient on a non-confidential basis at the time of disclosure of such information to it by the Disclosing Party or Representatives of the Disclosing Party, or is acquired from a source other than the Disclosing Party or its Representatives that is not prohibited from making disclosure, or (iii) is required to be disclosed in order to comply with any applicable law, order, regulation or ruling, or (iv) was independently developed by Recipient's Representatives prior to the date of this Agreement. In the event that the Recipient is legally required to disclose any Confidential Information, the Recipient will provide the Disclosing Party with prompt notice of such requirement so that the Disclosing Party may seek an appropriate protective order. Confidential Information shall not be deemed to be within the foregoing exceptions merely because it is (a) specific and embraced by more general information in the public domain or Recipient's possession, or (b) a combination which can be pieced together to reconstruct the

Confidential Information from multiple sources, none of which shows the whole combination, its principle operation and method of use.

(c) "Representative(s)" of a party includes directors, officers, employees and agents of such party and any affiliated companies of that party. In consideration for and as a condition of the Disclosing Party furnishing to the Recipient the Confidential Information, the Recipient agrees to treat the Confidential Information as provided in this Agreement.

2. (a) *Disclosure of Confidential Information and Existence of Transaction.* The Recipient and the Recipient's Representatives shall not, without the prior written consent of the Disclosing Party, disclose the Confidential Information, in whole or in part, to any other person, entity, or party. The Recipient and the Recipient's Representatives shall not, without the prior written consent of the Disclosing Party, disclose the name of the Client or the terms of the Project unless said disclosure is necessary and said disclosee first executes a confidentiality agreement which sets forth terms acceptable to Disclosing Party.

(b) *Use of Confidential Information.* The Recipient and the Recipient's Representatives shall use the Confidential Information only for the Purpose and shall not make any other use of the Confidential Information, including, without limitation, incorporating any Confidential Information into any service, product, or other work unrelated to the Purpose. Recipient shall not use the Confidential Information for its own benefit or the benefit of any third party, nor shall Recipient or Recipient's Representatives use the Confidential Information in any way detrimental to the Disclosing Party or otherwise, except as expressly set forth herein. The Recipient shall not copy or otherwise reproduce Confidential Information and shall not modify, decompile, create derivatives of, or reverse engineer any code contained in the Confidential Information. This Agreement grants no interest, right, title, or license, express or implied, to any patents, copyrights, trademarks, trade secrets, or other intellectual property that may be included in the Confidential Information.

(c) Notwithstanding the foregoing, (i) any of the Confidential Information of the Disclosing Party may be disclosed to those of the Recipient's Representatives who need to know such information to fulfill the Purpose (it being understood that such Representatives shall be informed of the confidential nature of such information, shall be directed to comply with the provisions of this Agreement, with respect to such information, and shall have agreed in writing to treat such information confidentially in accordance with the terms of this Agreement, and that the Recipient shall be liable for any breach of this agreement by any of its Representatives); and (ii) any other disclosure of the Confidential Information of the Disclosing Party may be made if the Disclosing Party specifically consents in writing to such disclosure.

(d) Promptly upon termination of this Agreement or upon request of the Disclosing Party, the Recipient shall at its sole cost and expense (i) return to the Disclosing Party all Confidential Information of the Disclosing Party previously furnished to the Recipient, together with all copies of any of the same made by it or its Representatives, and (ii) destroy all

other written material made by the Recipient or its Representatives to the extent such materials contain or reflect the Confidential Information of the Disclosing Party. The Recipient shall promptly execute and deliver to the Disclosing Party a certification attesting to the full and complete return and destruction of such information and any and all copies and reproductions thereof.

       3.      Without the prior written consent of the Disclosing Party, the Recipient shall not permit its Representatives to disclose to any person either the fact that the Purpose is taking place (or has taken place) or that the Recipient has requested or received Confidential Information from the Disclosing Party, or any of the terms, conditions or other facts with respect to the Purpose, including the status thereof. The term "person" as used in this Agreement shall be broadly interpreted to include, without limitation, any corporation, company, partnership, other legal entity or individual.

       4.      It is understood and agreed that no failure or delay by a party in exercising any of its rights, powers or privileges hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof.

       5.      The Disclosing Party has endeavored to include in the Confidential Information materials which the Disclosing Party believes to be reliable for the Purpose, however the Disclosing Party does not make any representation or warranty, express or implied, as to the accuracy or completeness of any of the Confidential Information, and neither the Disclosing Party nor any Representative of the Disclosing Party shall have any liability to Recipient or its Representatives resulting from the use of the Confidential Information by Recipient or its Representatives. The Disclosing Party shall have no duty to update or otherwise supplement the Confidential Information. Nothing in this Agreement will be construed to bind either party to enter into further negotiations or agreements with the other party.

       6.      Commencing with Effective Date and for a period of 3 years thereafter termination, SGU agrees that it shall not directly or indirectly (through a broker or otherwise) (i) engage in any of the matters included in the Proposal without the direct participation of GMED on terms acceptable to it in its sole discretion or (ii) conduct business with the governmental organizations or non-governmental organizations which GMED shall introduce to SGU without the direct participation of GMED's Representative acknowledges that this provision is ancillary to the Agreement and is necessary to protect GMED's protectible business interests, that a breach of this Section would irreparably harm GMED and that such restraint is reasonable.

       7.      The Recipient shall indemnify, defend and hold harmless the Disclosing Party and its Representatives, successors and assigns from and against any gross negligence from all demands, claims, losses, costs and liabilities (including without limitation, payment of reasonable attorneys' fees and other legal costs and expenses), and shall pay any and all gross negligence damages (including without limitation, judgments, penalties and settlement amounts)

with respect to any of the foregoing which are based upon, relate to or otherwise arise out of a breach or failure of Recipient of the confidentiality and/or non-circumvention provisions of this Agreement. The Parties agree that the Confidential Information is of a special, unique and extraordinary character and that disclosure or other use of such information in violation of this Agreement or the breach of the provisions set forth in the Sections above will irreparably harm the Disclosing Party. For this reason, the Recipient agrees that the Disclosing Party shall be entitled to seek injunctive relief to further prevent use and/or disclosure of Confidential Information in violation of this Agreement or the breach of the provisions set forth in the Sections7 above in addition to any other remedies available to it at law or in equity for breach of this Agreement, without a showing of irreparable harm or actual damages, and the Parties hereby consent that no bond in excess of $1,000 shall be necessary for obtaining such injunctive relief. Such remedy shall not be deemed to be the exclusive remedy for breach of this Agreement but may be in addition to all other remedies available at law or in equity.

8. The term of this Agreement shall be five (5) years from the date hereof. This agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to its conflicts of laws principles. Both parties hereby consent to the sole and exclusive jurisdiction of the state and federal courts in and for Harris County, Texas with respect to any cause of action arising out of or relating to this agreement. SGU only consents to jurisdiction for any disputes arising out of this agreement.

9. This Agreement constitutes the entire understanding and agreement between the parties hereto with respect to protection and use of Confidential Information and the other matters addressed herein and supersedes any and all prior agreements and understandings relating thereto, and no other person shall acquire or have any right under or by virtue of this agreement except as otherwise expressly provided herein. This agreement may not be modified or amended except by a written document signed by an authorized representative of the party to be bound. This agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties hereto. This agreement may be executed in counterparts, each deemed to be an original, along with all copies thereof, but both of which shall constitute the same agreement.

10. If any provision of this agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other provisions of this agreement shall nevertheless remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the dates set below:

| SAINT GEORGE'S UNIVERSITY LIMITED | GRADUATE MEDICAL EDUCATION DEVELOPMENT, LLC |
|---|---|
| By: _(Signature)_ | By: _(Signature)_  6/8/13 |
| Name: Charles J. Adams | Name: Arvin Baghespoor MD |
| Title: Executive Vice President & General Counsel | Title: General Director |
| Address: ___University Centre___ ___Grenada, West Indies___ | |