United States District Court
Southern District of Texas
**ENTERED**
October 06, 2016
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| GRADUATE MEDICAL EDUCATION DEVELOPMENT, LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | |
| ST. GEORGE'S UNIVERSITY, LTD., ST. GEORGE'S UNIVERSITY, LLC, ST. GEORGE'S UNIVERSITY SCHOOL OF MEDICINE, INC., and UNIVERSITY SUPPORT SERVICES, LLC, | § § § § § § | CIVIL ACTION H-15-2641 |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is the Magistrate Judge's Memorandum and Recommendation ("M&R") in which she recommends that the motion to dismiss filed by defendants St. George's University, Ltd. ("SGU Ltd."), St. George's University, LLC ("SGU LLC"), St. George's University School of Medicine, Inc. ("SGUSOM"), and University Support Services, LLC ("USS") (collectively, "Defendants") (Dkt. 25) be granted in part and denied in part. Dkt. 61. Defendants and plaintiff Graduate Medical Education Development, LLC ("GMED") filed objections to the M&R. Dkts. 62, 64. Defendants and GMED each responded to each other's objections, and they each filed a reply to the other's response. Dkts. 68, 69, 71, 72. In the midst of these filings, GMED also moved for leave to seal certain documents related to its objections. Dkt. 65. Defendants did not object to the motion to seal. After considering the motion to dismiss, the M&R, objections, related documents in the record, and applicable law, the court is of the opinion that the M&R should

be ADOPTED IN PART and the motion to dismiss should be GRANTED IN PART AND DENIED IN PART.  Additionally, GMED's motion to seal should be GRANTED.[1]

## I. BACKGROUND

The lawsuit relates to Defendants' alleged breach of a non-disclosure and non-circumvention agreement (the "NDA") between GMED and SGU Ltd.  Dkt. 1.  GMED contends that SGUSOM is a for-profit medical school located in Grenada.  *Id.*  GMED is a business designed to help non-U.S. medical schools such as SGUSOM place graduates into accredited residency programs by, among other things, establishing residency collaboratives with certain U.S.-based healthcare centers. *Id.*  GMED asserts that it agreed to share information with Defendants so long as Defendants signed the NDA.  *Id.*  GMED and SGU Ltd. executed the NDA in June of 2013.  Dkt. 1, Ex. A.

According to GMED's complaint, GMED shared its business model and other proprietary information with Defendants for the next one-and-one-half years through email, phone conferences, and meetings.  Dkt. 1.  GMED also arranged for Saudi Arabian education officials to meet with Defendants in an effort to help SGUSOM recruit non-U.S. students to attend its medical school.  *Id.* Defendants were informed by GMED that it was essential to keep this meeting so as to not jeopardize GMED's relationship with these officials, and Defendants assured GMED that it wanted to meet with the officials.  *Id.*  However, Defendants allegedly refused to attend the meeting at the last minute.  *Id.*  GMED asserts that this refusal to meet caused irreparable damage to GMED's business relationship with its contacts in Saudi Arabia.  *Id.*  GMED contends that this ultimately

---

[1]  GMED also moves to amend its objections, and Defendants move to strike GMED's objections in their response to GMED's objections.  The court will address these motions as well.

resulted in GMED's being passed over for a separate contract to provide services to the government of Saudi Arabia. *Id.* This separate contract was allegedly worth $135 million. *Id.*

Around this same time, Defendants allegedly advised GMED that they wished to explore and establish residency collaborations with other parties. *Id.* According to GMED, Defendants, along with some other partners, made a bid to purchase the Long Island Community Hospital to establish a residency collaboration with the hospital. *Id.* GMED asserts that this was a direct violation of the NDA. *Id.* GMED also asserts that the bid proposal contained plagiarized portions of the confidential and proprietary information GMED had provided to Defendants under the NDA. *Id.* GMED contends that Defendants also disclosed GMED's confidential information to certain Canadian and Chinese equity firms to secure investments and that Defendants obtained other investments by stating they intended to take part in GMED's residency collaborative and student recruitment initiatives, all in violation of the NDA. *Id.* GMED also allegedly learned that Defendants were creating residency collaboratives without GMED's assistance, and that they had been employing GMED's student recruitment methods in violation of the NDA. *Id.*

On September 11, 2015, GMED filed a complaint in this court asserting claims of breach of contract, trade secret misappropriation, quantum meruit, fraud, tortious interference with prospective business relations, unjust enrichment, vicarious liability, aiding and abetting, and civil conspiracy. *Id.* The complaint specifically contains a count entitled "piercing the corporate veil" in which GMED asserts that SGU LLC is vicariously liable for the actions of SGU Ltd., SGUSOM, and USS under an alter ego theory. *Id.* The complaint asserts that these other entities were organized as "mere tools or business conduits (alter egos) of [SGU LLC]," among various other alter ego allegations. *Id.*

3

On November 29, 2015, Defendants filed a motion to dismiss asserting (1) that the court does not have personal jurisdiction over the defendants who did not sign the NDA; (2) that GMED fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) for breach of contract, trade secret misappropriation, tortious interference, quantum meruit, or unjust enrichment; (3) that GMED does not meet the pleading standard under Federal Rule of Civil Procedure 9(b) for its fraud claim; (4) that GMED cannot recover attorneys' fees or exemplary damages; and (5) that GMED fails to state a claim for vicarious liability.  Dkt. 28.

GMED filed a response in which it asserted that the forum selection clause in the NDA applies to all the defendants and that the court may also assert personal jurisdiction over all the defendants under a traditional minimum contacts analysis.  Dkt. 30.  GMED also requested leave to conduct jurisdictional discovery.  *Id.*  GMED filed a separate response in which it argued (1) that it plead a plausible claim under Rule 12(b)(6) for breach of contract, trade secret misappropriation, tortious interference with prospective business relations, and quantum meruit or unjust enrichment; (2) that it properly alleged its fraud claims; (3) that its request for attorneys' fees and exemplary damages is proper; and (4) that its vicarious liability allegations are proper.[2]  Dkt. 32.

The Magistrate Judge granted GMED's motion to conduct jurisdictional discovery on January 21, 2016.  Dkt. 48.  After completing this discovery, GMED filed a supplemental response relating to the jurisdictional issues on June 20, 2016, and Defendants filed a supplemental reply on July 8, 2016.  Dkts. 55 (redacted), 56 (sealed), 60.

---

[2]  Defendants moved to strike the second response, but the Magistrate Judge denied the motion to strike.  Dkts. 37, 41.

4

On August 29, 2016, the Magistrate Judge issued her M&R.  Dkt. 61.  She found that the court has personal jurisdiction over all the defendants by imputing the contact between SGU Ltd. and GMED to the non-signatories of the NDA via an alter-ego theory.  *Id.*  She also determined (1) that GMED has stated a claim for breach of contract, quantum meruit and unjust enrichment, trade secret misappropriation, and tortious interference with a prospective business relationship under Rule 12(b)(6); (2) that GMED stated a plausible claim for fraud with the particularity required in Rule 9(b); (3) that GMED's complaint sufficiently alleges a conspiracy; and (4) that GMED did not sufficiently state a claim for aiding and abetting.  *Id.*  She thus recommends that the motion to dismiss be granted as to the aiding and abetting claim but otherwise denied.  *Id.*

Defendants object to the M&R on several grounds.  Dkt. 62.  First, they assert that the court may not assert personal jurisdiction over the defendants who did not sign the NDA.  *Id.*  They state that the Magistrate Judge relied on facts that are insufficient as a matter of law to support her alter ego finding because (1) common stock ownership and common directors alone do not support an alter ego finding; (2) the Magistrate Judge incorrectly found the Defendants had identical business addresses; (3) the defendants maintain separate books and accounts; and (4) the Magistrate Judge did not consider key facts that caution against exercising jurisdiction over the defendants who did not sign the NDA.  *Id.*  Defendants also assert that the Magistrate Judge incorrectly found that GMED pled a claim for breach of contract, trade secret misappropriation, fraud, tortious interference, and conspiracy.  *Id.*  GMED filed a response to Defendants' objections in which GMED argues that the Magistrate's findings on these issues were all correct.  Dkt. 69.

GMED also objects to the M&R.  Dkt. 64 (redacted), 66 (sealed).  In its objections, GMED requests leave to file an amended complaint to replead its aiding and abetting claim, to add Selinus,

LLC as a defendant pursuant to Federal Rule of Civil Procedure 15(c), and to add more detailed factual information regarding the trade secrets it allegedly shared with Defendants.  Dkt. 66. Defendants assert that the court should strike GMED's filing for failing to comply with Rule 72, which requires specific written objections, and that, regardless, the court should deny the motion to amend because (1) amending the aiding and abetting claim would be futile; (2) Selinus, LLC is not a proper defendant; and (3) it is improper for GMED to seek leave to add undisclosed facts to the complaint.  Dkt. 68.  GMED filed a reply in which it states that it is simply requesting leave to amend under the liberal amendment procedure of Federal Rule of Civil Procedure 15(a).  Dkt. 71. Defendants also filed a reply that reiterates the reasons they believe their objections should be sustained.  Dkt. 72.

## II. LEGAL STANDARDS

### A.   Review of a Magistrate Judge's Opinion

For dispositive matters, the court "determine(s) de novo any part of the magistrate judge's disposition that has been properly objected to." *See* Fed. R. Civ. P. 72(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*  "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Comm. Note (1983).  For nondispositive matters, the court may set aside the magistrate judge's order only to the extent that it is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  Here, the court will review all issues to which objections were filed de novo and will consider whether there is any clear error on the fact of the record with regard to portions of the M&R to which no party objected.

**B.      Motion to Dismiss for Lack of Personal Jurisdiction**

In a diversity action such as this one, a federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with due process under the U.S. Constitution.  *Clements v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).  In Texas, this two-step personal jurisdiction inquiry collapses into one federal due process analysis because the Texas long-arm statute extends to the limits of federal due process.  *Id.* "[T]o satisfy the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself [or herself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"  *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

Personal jurisdiction may be general or specific.  *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008).  Here, GMED asserts that the court has specific jurisdiction based on the NDA, which contains a forum selection clause selecting this forum.  A forum state may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868 (1984). In a breach of contract case, the court must decide (1) whether the defendant has minimum contacts with the forum state, (2) whether the plaintiff's cause of action arises from the contract in question, and (3) whether the exercise of personal jurisdiction is fair and reasonable.  *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).  "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise

would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

## C.     Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007).  In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

## D.     Motion to Dismiss Under Rule 9(b)

In addition to meeting the plausibility standard, under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)).  However, this particularity requirement "does not 'reflect a subscription to fact pleading.'" *Id.* (quoting *Williams*

8

*v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).  Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).  Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  However, "Rule 9(b)'s ultimate meaning is context-specific." *Grubbs*, 565 F.3d at 185.  Thus, "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id.*

## E.    Motion to Amend

When a complaint fails to state a claim, the court generally gives plaintiff an opportunity to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  It is, however, within the district court's discretion to deny a motion to amend if the amendment would be futile. *Stripling v. Jordan Prod.*

*Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).  "Futility" has been interpreted by the Fifth Circuit to "mean that the amended complaint would fail to state a claim upon which relief could be granted." *Id.*

### III. ANALYSIS

The court will first consider GMED's motion to seal.  It will then consider Defendants' motion to strike GMED's "objections," which are, in actuality, a motion to amend.  Next, it will address each of Defendants' objections to the M&R *in seriatim*.  Finally, the court will determine whether GMED should be given leave to amend.

### A.    Motion to Seal

GMED moves to file certain documents related to its objections to the M&R under seal. Dkt. 65.  Defendants did not file a response to this motion.  Under Southern District of Texas Local Rule 7.4, "[f]ailure to respond will be taken as a representation of no opposition." S.D. Tex. L.R. 7.4. GMED's motion (Dkt. 65) to file documents partially under seal is GRANTED as unopposed.

### B.    Motion to Strike

Defendants move to strike GMED's objections to the M&R because, in reality, the document purporting to be objections is "nothing more than a stealth request to amend the complaint that blatantly ignores the rules and procedures that govern a proper Rule 15 motion."  Dkt. 68. Defendants argue that if GMED had filed an actual Rule 15 motion to amend, GMED would have had to include a certificate of conference and provided caselaw regarding the proper legal standard for a motion to amend.  *Id.*

The court agrees that the document GMED filed as objections is, in reality, a motion to amend, and the court construes it as such.  While GMED did not follow the standard procedure of

filing a certificate of conference, the court notes that it is relatively standard for parties to include a request to amend with a response to a motion to dismiss, and the court does not believe this situation is significantly different.  Moreover, it would be a waste of judicial resources as well as the parties' resources to require GMED to refile the "objection" as a "motion to amend" at this point. Defendants have already presented their substantive argument against allowing an amendment. Accordingly, Defendants' motion to strike is DENIED.[3]  The court will address the request to amend after addressing Defendants' objections to the M&R.

## C.    Defendants' Objections

### 1.    Personal Jurisdiction

The Magistrate Judge determined that the contacts of SGU Ltd., which is the only defendant who signed the NDA, should be imputed to the defendants who did not sign the NDA (the "Non-Signatory Defendants") under an alter ego theory.  Dkt. 61.  She noted (1) that Defendants share multiple officers; (2) that SGU Ltd. is wholly owned by SGU LLC; (3) that the daily business activities of USS and SGUSOM are intertwined with SGU Ltd.; (4) that the business addresses of the entities are identical; and (5) that there are no separate books and accounts.  *Id.*  She found that "the evidence presented to the court by [GMED] is sufficient to establish an alter ego relationship between SGU Ltd. and the non-signatory defendants" and imputed all of the contacts between Texas and SGU Ltd. to the Non-Signatory Defendants for jurisdictional purposes.  *Id.*  She then determined that SGU Ltd. had purposefully availed itself of this forum by entering into the NDA with GMED.

---

[3]  Interestingly, Defendants' motion to strike is filed in the court's electronic case filing system as "Objections to Memorandum and Recommendation," and the motion to strike is entitled "Defendants' Response to Plaintiff's Objections to the Magistrate's Memorandum and Recommendation."  Dkt. 68.

*Id.*  The NDA contains a forum selection clause selecting this forum.[4]  Dkt. 1, Ex. A.  She further found exercising jurisdiction of Defendants comports with traditional notions of fair play and substantial justice because (1) the parties agreed to the NDA, which contains a forum selection clause agreeing that claims would be brought in Harris County, Texas; (2) Texas has an interest in protecting the trade secrets of GMED, a Texas corporation; and (3) Texas is a convenient forum because GMED conducts business here.  Dkt. 61.

Defendants object first that in order to find that the Non-Signatory Defendants are subject to personal jurisdiction under an alter ego theory, the court must determine that SGU Ltd. used its control over the Non-Signatory Defendants to commit a fraud or wrong that injured GMED. Dkt. 62.  Indeed, under Fifth Circuit law, a "corporate veil may be pierced to hold an alter ego *liable* for the commitments of its instrumentality only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the part seeking to pierce the corporate veil."  *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003) (emphasis added).  However, "the alter ego test for attribution of contact, i.e. , personal jurisdiction, is less stringent than that for liability."  *Stuart v.*

---

[4]  The Forum Selection Clause states:

> The term of this Agreement shall be five (5) years from the date hereof.  This agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to its conflicts of laws principles.  Both parties hereby consent to the sole and exclusive jurisdiction of the state and federal courts in and for Harris County, Texas with respect to any cause of action arising out of or relating to this agreement.  SGU only consents to jurisdiction for any disputes arising out of this agreement.

Dkt. 1, Ex. A ¶ 8.

*Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985); *see also Marine Midland Bank, N.A. v. Miller*,

664 F.2d 899, 904 (2nd Cir. 1981) (finding that "the district court erred in applying the strict test

used by New York in determining whether or not to pierce the corporate veil for purposes of

liability" because "[i]n deciding the limited question of whether [the court] had jurisdiction the court

should have looked only to the question of whether [the defendant challenging jurisdiction] was a

shell for [the defendant over whom the court clearly had jurisdiction]; it should not have required

a showing that the shell was used to commit fraud"). "'[O]nly a prima facie showing is required on

a jurisdiction motion.'"   *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1161 (5th Cir. 1983)

(quoting 4 C. Wright & A. Miller, Federal Practice and Procedure § 1068, at 250 (1969)).  Thus, the

Fifth Circuit finds it "appropriate[]" to "apply[] a less stringent standard for alter ego jurisdiction

than alter ego liability."  *Id.*  The court is therefore unconvinced that the Magistrate Judge erred in

not requiring GMED to prove fraud in order to exercise personal jurisdiction over the Non-Signatory

Defendants.  This objection is OVERRULED.

Defendants next contend that the Magistrate Judge misapplied the *Hargrave* factors in

determining whether the Defendants maintained separate and distinct corporate entities.  Dkt. 62.

Under *Hargrave*, the court must consider whether:

> (1) distinct and adequately capitalized financial units are incorporated
> and maintained; (2) daily operations of the two corporations are
> separate; (3) formal barriers between management of the two entities
> are erected, with each functioning in its own best interests; and (4)
> those with whom the corporations come in contact are apprised of
> their separate identity. Other factors deemed important by the
> commentators and Texas courts are: (1) common stock ownership; (2)
> the method and degree of financing of the subsidiary by the parent;
> (3) common directors or officers; (4) separate books and accounts; (5)
> common business departments; (6) extent to which contracts between
> parent and subsidiary favor one over the other; and (7) connection of

> parent's employee, officer or director to subsidiary's tort or contract
> giving rise to suit.

*Hargrave*, 710 F.2d at 1162–63 (quoting *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193 (5th Cir. 1983)).

Defendants contend that the Magistrate Judge incorrectly focused on "secondary or irrelevant considerations rather than issue-determinative factors," did not "consider the totality of the circumstances," and overlooked "the basic principle that consent by one corporate entity will not be fused to a corporate parent or other affiliate absent some 'plus factor,' providing some basis . . . for departing from the general rule that corporate entities are not bound by the jurisdictional consent of their affiliates." Dkt. 62.

With regard to the "plus factor," it is true that "the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007). "There must be a 'plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family.'" *Licea v. Curacao Drydock Co, Inc.*, 627 F. App'x 343, 348 (5th Cir. Nov. 23, 2015) (unpublished) (citing *PHC-Minden*, 235 S.W.3d at 175 (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999))). "Not pertinent to *jurisdictional* veil piercing analysis, however, are allegations of fraud and a common name among the entities." *Id.* (citing *PHC-Minden*, 235 S.W.3d at 175). Defendants assert that the Magistrate Judge's findings—that Defendants share officers and directors, have identical business addresses, and file consolidated financial statements—do not satisfy this standard. Dkt. 62.

14

The court agrees that evidence of a "plus factor" would be extremely thin if it were to only consider common officers and directors, the business addresses, and the consolidated financial statements.  However, the Magistrate Judge also found that the daily business operations of the entities were intertwined.  Dkt. 61.  USS's and SGUSOM's daily activities include providing services to SGU Ltd. via services agreements.  Dkt. 56.  USS's services include financial services, recruiting, computer services, and administrative services.  *Id.*  SGUSOM's services include making payments on behalf of SGU Ltd.  *Id.*  SGU LLC is merely a holding company.  *Id.*  While a parent may have control over general policy decisions, the "day-to-day business and operational decisions may not be made by the parent."  *Dunn v. A/S Em. Z. Svitzer*, 885 F. Supp. 980, 988 (S.D. Tex. 1995) (Rosenthal, J.) (relying on *Hargrave*, 710 F.2d at 1160, and *Southmark Corp. v. Life Inv'rs, Inc.*, 851 F.2d 763, 773 (5th Cir. 1988)).  Here, while GMED does not provide any evidence of who actually makes the day-to-day business decisions of each separate entity, the day-to-day business of actually running the university appears to be a joint operation.  This is more than a "mere presence within the bosom of the corporate family."

Defendants contend that even if the court agrees with the Magistrate Judge that these findings are sufficient to find alter ego status, some of these findings are wrong.  They argue that the entities do not have identical business addresses and that they maintain separate books and accounts.  Dkt. 62.  They note that their interrogatory responses demonstrate separate business addresses for each defendant,[5] Dkt. 62 (citing Dkt. 55, Exs. 1–4 (interrogatory responses)), and they point out that

---

[5] SGU Ltd.'s registered office and mailing address is listed as being in Grenada, West Indies. Dkt. 55, Ex. 1.  SGU LLC stated that it has no physical office or mailing address but that its registered agent's mailing address is in Wilmington, Delaware.  Dkt. 55, Ex. 2.  USS's mailing address is in Great River, New York.  Dkt. 55, Ex. 3.  And SGUSOM's primary office and mailing address are in Naples, Florida.  Dkt. 55, Ex. 4.  The Magistrate Judge pointed out in the M&R that

each defendant actually files a separate tax return and that some entities even run on different fiscal years, *id.* (citing Dkt. 55, Exs. 1–4, 18).  Defendants note that they only file consolidated financial statements because the U.S. Department of Education requires consolidated statements.[6]  *Id.* Moreover, Defendants point out, filing consolidated financial statements does not equate to not maintaining separate books and accounts.  *Id.*  They note that each entity has a different management structure and performs discrete business activities.  *Id.*  In response, GMED asserts that except for SGUSOM, which uses the home address of one of its officers, the remaining defendants "share" the same Great River, New York address.  Dkt. 69.  GMED does not address Defendants' argument regarding the financial statements.  *See id.*

Given this clarification of the evidence and considering the initial *Hargrave* factors, these facts alone are insufficient to demonstrate that any one of the defendants "exercised the nature and degree of control" over the other defendants "necessary to fuse the . . . corporations for purposes of the Texas long-arm statute."  *Hargrave*, 710 F.2d at 1161.  There is no evidence indicating any of the entities are underfunded, and there appears to be some distinctions in operations and some formal barriers erected.  As far as other people being apprised of the entities' separate identities, while three

SGU Ltd.'s website states that in addition to the Grenada address, it may be contacted in care of USS at USS's Great River address.  Dkt. 61 (citing Dkt. 55-10 (Ex. 19)).  SGU LLC has also indicated in federal filings that it can be reached by mailing document in care of USS to the Great River, New York address.  *Id.* (citing Dkt. 56-2 (Ex. 7)).  The Magistrate Judge noted that SGU Inc. uses Patrick Adams's Naples, Florida residence as its mailing address.  *Id.* (citing Dkt. 55-4 (Ex. 4)).

[6] Under 34 C.F.R. § 668.23(d)(2), "To the extent requested by the Secretary in determining whether an institution is financially responsible, the Secretary may also require the submission of audited consolidated financial statements, audited full consolidating financial statements, audited combined financial statements, or the audited financial statements of one or more related parties that have the ability, either individually or collectively, to significantly influence or control the institution, as determined by the Secretary."

of the defendants list USS's office as a potential mailing address on certain documents, the addresses listed for non-USS entities also clearly say to send "c/o USS," which certainly gives the appearance that the address is that of USS, which will forward any mail to its affiliates, not that the affiliates are actually located at that address.

However, when the court considers the commonality apparent with the "other factors" in addition to the initial *Hargrave* factors, it finds that GMED has made at least the *prima facie* showing of alter ego sufficient for the court to exercise personal jurisdiction over the Non-Signatory Defendants.  With regard to the first "other factor," stock ownership, SGU Ltd. is wholly owned by SGU LLC (a holding company), and SGU LLC currently is owned by St. George's University Group LP ("SGU Group").  Dkts. 56; 61; Dkt. 56, Ex. 4.  Prior to 2014, SGU LLC was owned by a variety of different individuals and trusts.  Dkt. 56 & Ex. 9.  SGUSOM and USS were wholly owned by SGU LLC until September 2014 and are now owned by SGU Group.  Dkt. 56 & Ex. 4.  While this is certainly a significant overlap in ownership, "[t]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship" to find alter ego status.  *Hargrave*, 710 F.2d at 1160.

With regard to the second "other factor," degree of financing, USS's and SGUSOM's sole business activity, as discussed in their responses to interrogatories, is providing services to SGU Ltd. under Services Agreements.  Dkt. 56.  Thus, it appears that some entities are financed by other entities.  The third other factor, common directors or officers, weighs in favor of alter ego status, as the directors and officers of the separate entities overlap significantly.  The fourth factor, separate books, also weighs slightly in favor of alter ego status because Defendants file consolidated financial statements, but the fact that they are required to do so and that they file separate tax returns and that

17

GMED does not provide evidence relating to the actual books and other records deteriorates the strength of this factor.  The fifth factor is neutral, as while it appears that all the entities serve the common goal of running the medical school and three of the four receive mail at the same physical address, there is no actual evidence that they share a common business department.  The sixth factor is also neutral, as there is no evidence regarding how the entities are treated in relation to the other entities in contracts, except, of course, the contract at issue.  With regard to the seventh "other factor," the person who signed the contract giving rise to this lawsuit, Charles Adams,[7] has clear connections to three of the defendants—SGU Ltd., SGUSOM, and SGU LLC, which gives some support for finding alter ego with regard to these entities.

The court finds, after a de novo review and taking into account all of the *Hargrave* factors, that there is sufficient evidence of alter ego to justify haling all of Defendants into this forum based on the forum-selection clause agreed to by SGU Ltd.  Defendants' objection that the Magistrate Judge misapplied the *Hargrave* factors is OVERRULED.  Additionally, there is no clear error in the Magistrate Judge's conclusion regarding exercising jurisdiction to which the Defendants did not object.  The court therefore ADOPTS the Magistrate Judge's conclusion with regard to exercising personal jurisdiction over Defendants under an alter ego theory.  The court cautions, however, that this was a close call and more evidence will be required to establish liability under this theory.

## 2. Failure to State a Claim

Defendants also assert that the Magistrate Judge incorrectly found that GMED pled a claim for breach of contract, trade secret misappropriation, fraud, tortious interference, and conspiracy.

---

[7] Charles Adams is the Executive Vice President and General Counsel of SGU Ltd., the executive director and treasurer for USS, the General Counsel and secretary of SGUSOM.  He is also listed as the "agent" for SGU LLC.  Dkt. 1, Ex. A (NDA); Ellis Dec., Exs. B, C, D.

Dkt. 62.  Defendants do not object to the Magistrate Judge's findings with regard to quantum meruit, unjust enrichment, or attorneys' fees and exemplary damages.  The court finds no clear error in these findings and therefore ADOPTS the M&R's reasoning and conclusion with regard to these issues. It now reviews the Magistrate Judge's conclusions to which Defendants objected—breach of contract, trade secret misappropriation, fraud, tortious interference, and conspiracy—de novo.

### (a)      Breach of Contract

Defendants assert that the Magistrate Judge erred in failing to dismiss GMED's breach of contract claim.  They argue that GMED's breach of contract claims should be dismissed, or at least dismissed against the Non-Signatory Defendants, because (1) GMED pled no facts that plausibly indicate that GMED had a contract with the Non-Signatory Defendants; and (2) the definition of "Confidential Information" in the contract precludes this breach of contract claim altogether as it refers only to the information contained in Exhibit A to the contract, and the contract attached to the complaint did not include an Exhibit A.  Dkt. 62.  With regard to the first contention, the court finds that since GMED has made a *prima facie* showing of alter ego, the breach of contract claim against the Non-Signatory Defendants is plausibly pled.  Thus, Defendants' objection to the Magistrate Judge's finding on this ground is OVERRULED.

With regard to the second contention, GMED asserts that Defendants' position that the drafters' failure to attach Exhibit A to the contract at the time of execution indicates that "the parties must have intended that no information is confidential" is "absurd."  Dkt. 69.  The court agrees.

The contract states:

> As used herein, "Confidential Information" refers to any and all written, visual, or oral information relating to the design, manufacture, testing, evaluation, marketing, sale and other provision

> or use of those products and/or services GMED listed in Exhibit A
> hereto and related products, technology, media and marketing
> processes and services which is proprietary and confidential to
> GMED and/or affiliated companies and is hereafter provided to SGU
> for the Purpose by GMED or its Representatives.   Confidential
> Information shall include, but not be limited to, names of GMED's
> contacts at various governmental and non-governmental institutions
> . . ., data, notes, analyses, compilations, studies, interpretations,
> know-how, licenses, intellectual property, ideas, plans, designs,
> processes, specifications, computer programs, business plans,
> financial or marketing plans, or other materials . . . as well as all
> information generated by SGU that contains or reflects received
> information in whole or in part. . . ."

Dkt. 1, Ex. A ¶ 1(a).

Defendants seek to cut off the definition of "Confidential Information" at the end of the first sentence of the definition and argue that since Exhibit A was not attached, there must be no confidential information.  Even if the definition only encompassed the first sentence, which it clearly does not given the second sentence starts with "Confidential Information shall include," the court could not interpret the definition as pertaining to no confidential information simply because Exhibit A is not attached.  This would render the provision, and in fact the contract, meaningless.  The court finds that the Magistrate Judge correctly recommended that Defendants' motion to dismiss the breach of contract claim on this basis be denied.  Defendants' objection is thus OVERRULED.

### (b)     Trade Secret Misappropriation

Defendants argue that the Magistrate Judge incorrectly held that GMED adequately pled a claim for trade secret misappropriation because GMED did not plead that it owns a trade secret, did not properly allege that the trade secrets were misappropriated, and has not adequately alleged that Defendants improperly used the trade secrets.  Dkt. 62.

With regard to owning a trade secret, GMED alleges in the complaint that it is "the owner of valuable trade secrets, namely GMED's Residency Collaborative and student recruitment methologies." Dkt. 1.  It goes on to discuss these secrets.  *Id.*  Defendants argue the residency collaborative cannot possibly be a trade secret because "the idea to assist healthcare providers to obtain accreditation is no secret" and GMED failed to assert that the residency collaboratives were "independently valuable." Dkt. 62.  Defendants argue that the recruitment methodologies cannot be a trade secret because GMED has not claimed that it has a protected interest in the relationships that form the basis of the methodologies or that it derives any independent value from them.  *Id.*  The court finds, however, that the Magistrate Judge correctly found that GMED has plausibly pled it is the owner of valuable trade secrets.   GMED is not burdened with showing the residency collaborative and recruitment methodologies are trade secrets at this point, just that it is plausible.

With regard to misappropriation, GMED asserts in its complaint that Defendants misappropriated its trade secrets by pretending to seek to enter a business deal as specified in the NDA while at the same time disclosing the trade secrets GMED provided.  Dkt. 1.  Defendants assert that GMED has not properly pled that the trade secrets were misappropriated because GMED admits that Defendants received the secrets pursuant to the NDA, and to state a claim for trade secret misappropriation one must indicate that the trade secret was acquired through a breach of a confidential relationship or discovered by improper means.  Dkt. 62 (citing *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 875 (5th Cir. 2013)).  GMED argues that Defendants misapply the common law and completely ignore the Texas Uniform Trade Secret Act when making their argument, as breach of a duty to maintain secrecy is sufficient to show trade secret misappropriation, and Defendants breached their obligation under the NDA to maintain secrecy.  Dkt. 67.

21

Under Texas common law, a party establishes a trade secret misappropriation claim by showing "(a) a trade secret existed, (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (c) use of the trade secret without authorization from the plaintiff." *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994). Discovering by "improper means" "includes theft, fraud, unauthorized interception of communications, inducement of or *knowing participation in breach of confidence*, and other means either wrongful in themselves or wrongful under the circumstances of the case." *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 636 (Tex. App.—Fort Worth 2007, pet. denied) (emphasis added); *see Wellogix, Inc.*, 716 F.3d at 876 (citing *Astoria* for this definition). The statute relied upon by GMED also defines misappropriation to include trade secrets "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3). The court agrees with the Magistrate Judge that GMED has sufficiently pled misappropriation to survive a motion to dismiss.

Finally, Defendants claim that GMED has not sufficiently alleged that Defendants improperly used the trade secrets. Dkt. 62. GMED asserts that its allegations that (1) Defendants' chief executive told GMED that Defendants had already been using GMED's trade secrets without approval to establish residency collaboratives in late 2014, and (2) Defendants improperly used GMED's trade secrets when they attempted to acquire Long Island Community Hospital, satisfies its burden of pleading that Defendants misappropriated its trade secrets. Dkt. 69. The court agrees with the Magistrate Judge that GMED has plausibly pled this portion of the claim. Defendants' objections to the Magistrate Judge's findings that GMED adequately pled its trade secret

22

misappropriation claim are OVERRULED, and Defendants' motion to dismiss this claim is DENIED.

### (c)    Fraud

Next, Defendants object that the Magistrate Judge should have recommended dismissing GMED's fraud claim under Federal Rule of Civil Procedure 9(b). Dkt. 62. The Magistrate Judge listed various allegations upon which GMED rests its fraud claim. *See* Dkt. 61 at 27. She then noted that some of the statements relied upon by GMED cannot support the fraud claim because they are true. *See id.* For instance, the Magistrate Judge noted that GMED could not rely on the statement that Defendants were interested in meeting with officials from Saudi Arabia for its fraud claim because when Defendants made that statement, it was true. *See id.* The Magistrate Judge found, however, that the assertion that Defendants thereafter gave repeated assurances that they were interested and then refused to meet with the officials supports the fraud claim. Dkt. 61. Defendants complain that this is insufficient under the heightened pleading standard because these are "*general* allegations." Dkt. 62. However, the court finds that it is clear from the pleadings that GMED is alleging that at some point after the initial true statement, which is pled with particularity, the reassurances became false. It would be impossible for GMED to pinpoint exactly when this happened at the pleading stage. However, "Rule 9(b)'s ultimate meaning is context-specific." *Grubbs*, 565 F.3d at 185. Here, there is enough context for Defendants to understand exactly what GMED is contending with regard to its fraud claim. Defendants' objection to the Magistrate Judge's findings with regard to the fraud claim is OVERRULED, and Defendants' motion to dismiss the fraud claim is DENIED.

23

### (d)    Tortious Interference

Defendants object that the Magistrate Judge erred in recommending that GMED's tortious interference with prospective business relations claim not be dismissed because she did not apply a necessary element of the cause of action.  Dkt. 62.  Specifically, Defendants claim that the Magistrate Judge did not require an allegation that their conduct was independently tortious or unlawful.  *Id.*  Defendants note that GMED attempts to state that Defendants' fraud is the independently tortious conduct, but they state that since the fraud claim must fail for lack of particularity, this claim must also fail.  *Id.*  However, since the court finds that the fraud claim is sufficiently pled, this argument is to no avail, and the objection is OVERRULED.

Defendants also contend that the Magistrate Judge erred in not recommending dismissal of the tortious interference claim because the complaint does not sufficiently allege that Defendants knew about and intentionally interfered with GMED's prospective contract with Saudi officials.  *Id.*  GMED asserts that the law does not require it to show that Defendants knew about the specific contract that GMED alleges it lost due to Defendants' interference with its relations with Saudi officials.  Dkt. 67.  The complaint states that GMED warned Defendants that failure to attend the meeting would jeopardize GMED's business relationship with these officials.  Dkt. 1.

> To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

24

*Coinmatch Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).  Nothing in these elements requires the plaintiff to allege that the defendants knew about a specific contract that would not be entered into if the defendants interfered.  Rather, a plaintiff must plead that the defendants "knew the interference was certain or substantially certain to occur as a result of the conduct."  Here, GMED pled that it told Defendants that it would harm its relationship with the Saudi officials if Defendants failed to meet with the officials and that Defendants "understood the importance of maintaining this relationship."  Dkt. 1.  The court finds this is sufficient to plausibly show that Defendants knew that interference would occur if they failed to attend the meeting.  The objection to the Magistrate Judge's findings with regard to the tortious interference claim is OVERRULED, and Defendants' motion to dismiss this claim is DENIED.

### (e)     Conspiracy

Next, Defendants argue that the Magistrate Judge incorrectly determined that GMED stated a claim for conspiracy to misappropriate trade secrets.  Dkt. 62.  Defendants assert that the complaint merely sets out the elements of a conspiracy claim and certainly does not sufficiently meet the heightened pleading standard for its claim for a conspiracy to defraud.  *Id.*

GMED contends that "Defendants here are a group of indistinguishable entities acting in concert through the officers that they all have in common" and that all of its contentions in the complaint relate to a conspiracy amongst the Defendants, as it refers to the defendants collectively throughout the complaint.  Dkt. 67.  Defendants point out that GMED did not even address their argument that GMED failed to meet the heightened pleading standard of Rule 9(b) and that it is simply not enough to allege a conspiracy to commit fraud by saying the Defendants are closely related and acted in concert.  Dkt. 72.

25

The court agrees with Defendants that Rule 9(b) applies to GMED's conspiracy to commit fraud claim. *See Grubbs*, 565 F.3d at 193 ("[A] plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'" (quoting *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008)). The complaint does not provide any detail about which specific defendant took what overt acts in furtherance of the conspiracy. Thus, GMED fails to state a claim for conspiracy to commit fraud with the particularity required by Rule 9(b).

The court similarly finds that the general allegations about the acts of all Defendants is insufficient to allege conspiracy to misappropriate trade secrets or conspiracy to tortiously interfere with business relations. As the Magistrate Judge noted, GMED's pleading "refers to all Defendants collectively as 'SGU Defendants' and alleges all actions against Defendants interchangeably." Dkt. 61. While certainly, given the overlap in officers for each defendant, GMED's alleged facts *suggest* the defendants were acting in concert, without identifying the specific actors, there is insufficient notice of a meeting of the minds or of who committed overt acts, and these are necessary elements of a civil conspiracy claim. *See id.* (listing the elements as set forth in *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)). Accordingly, Defendants' objection to the Magistrate Judge's findings with regard to the civil conspiracy claim is SUSTAINED, and Defendants' motion to dismiss the civil conspiracy claim is GRANTED.

## D.    Leave to Amend

In its "objections" to the M&R, GMED requests leave to amend its complaint to modify its aiding and abetting claim, join Selinus, LLP as a new defendant, and add more factual detail relating to its trade secret misappropriation claim. Dkt. 64.

### 1.    Amending Aiding and Abetting Claim

The Magistrate Judge recommended dismissal of the aiding and abetting claim.  *See* Dkt. 61. Rather than object to this finding, GMED would like to replead the claim.  Dkt. 64.  Defendants assert allowing GMED to replead the aiding and abetting claim would be futile.  Dkt. 68.  The Magistrate Judge correctly explained that "Texas has not recognized an independent 'aiding and abetting' fraud claim independent from a conspiracy claim."  Dkt. 61 (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001)).  GMED does not explain how it intends to replead its claim to remedy this issue.  Instead, it notes the "common practice of federal courts to grant leave to amend to allow a party to replead a dismissed claim."  Dkt. 71.  While the court agrees it is common to grant leave to amend, it is also common for federal courts to deny leave to amend when amendment would be futile.  *See Stripling*, 234 F.3d at 873 ("It is within the district court's discretion to deny a motion to amend if it is futile."); *see also, e.g.*, *Abcassis v. Wyatt*, 999 F. Supp. 2d 962, 967 (S.D. Tex. 2014) (Miller, J.) ("[T]he defects to the third party complaint are incurable, and amendment would be futile."); *Casey v. Fed. Home Loan Mortg. Ass'n*, No. H-11-3830, 2012 WL 1425138, at *9 (S.D. Tex. Apr. 23, 2012) (Miller, J.) ("[T]he court finds that amending the fraud or promissory estoppel claims would be futile."); *Cade v. BAC Home Loans Servicing, LP*, No. H-10-4224, 2011 WL 2470733, at *6 (S.D. Tex. June 20, 2011) (Miller, J.) ("The court finds that an amendment to the promissory estoppel claim would likewise be futile.").  "An amendment is futile if it would not survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Landavazo v. Toro Co.*, 301 F. App'x 333, 337 (5th Cir. 2008).

Since, as the Magistrate Judge stated, the aiding and abetting cause of action is not available, the court finds that allowing GMED to amend the claim would be futile.  GMED's "objection," to the extent it can be considered an objection, is OVERRULED.  The court hereby ADOPTS the Magistrate Judge's reasoning and conclusion with regard to the aiding and abetting claim.  GMED's request to replead its aiding and abetting claim is DENIED.

### 2.  Joining Selinus, LLC

GMED also requests leave to add Selinus, LLC as a new defendant pursuant to Federal Rule of Civil Procedure 15(c).  Dkt. 64.  GMED provides evidence, in the form of a U.S. Return of Partnership Income form, that Selinus, LLC claimed it is an entity formerly known as St. George's University, LLC—a currently named defendant.  Dkt. 66 & Ex. 1.  This document indicates that Selinus, LLC is a holding company and that it may receive mail in care of USS in Great River, New York.  Dkt. 66, Ex. 1.  Other documentation indicates that SGU LLC continues to exist but that the economic interests in SGU LLC are held by a series of wholly-owned foreign subsidiaries, and that Selinus LLC holds approximately 40% ownership.  Dkt. 56, Ex. 5.

Defendants assert that GMED must establish that it is appropriate to join Selinus, LLC under Rule 20(a) and argue that GMED has not done so.  Dkt. 68.  Under Federal Rule of Civil Procedure 20(a), a new defendant may be joined if

> (A) any right of relief is asserted against [the defendant] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

28

Defendants argue that GMED cannot meet these requirements because (1) Selinus, LLC did not become affiliated with Defendants until August of 2014, which is after the primary facts alleged in the complaint took place; and (2) the bases for the alter ego contentions are inapplicable to Selinus, LLC because Selinus, LLC is not the direct owner of any of the SGU entities, its primary business purpose is to manage the equity interest of SG Group LP, and it does not even prepare financial statements and thus cannot have consolidated financial statements with Defendants. Dkt. 68.  Defendants argue that because GMED cannot show that Selinus, LLC is subject to the court's jurisdiction under the alter ego theory, amendment would be futile.  *Id.*

GMED does not address these concerns in its reply.  Dkt. 71.  Instead, it reiterates that it "would also request leave to add Selinus, LLC to this lawsuit."  *Id.*  While the court agrees with GMED that it often freely grants leave to amend, GMED has the burden of showing that Selinus, LLC is an appropriate defendant to join under Rule 20.  It presented some evidence that Selinus, LLC is linked to the other defendants, but since the evidence shows that Selinus, LLC was created in late 2014, it is unclear what claims GMED could even pursue against Selinus, LLC.  GMED had the burden of showing that it was proper to join this defendant and has not met that burden. Accordingly, the request to join Selinus, LLC as a new defendant is DENIED.

### 3.    Adding Additional Factual Details

Finally, GMED requests to amend its complaint to "provide additional factual allegations to its trade secret claim."  Dkt. 71.  Defendants complain that GMED did not list the facts it wishes to add to its pleadings or how these facts will have a practical impact on this case, which was filed almost a year ago.  Dkt. 68.  However, the court finds no harm in allowing GMED to flesh out the factual bases of its trade secret claim, which will only provide greater notice to Defendants of

29

GMED's allegations.  Accordingly, the portion of the motion to amend that requests to add more factual background is GRANTED.

## IV. CONCLUSION

GMED's motion to file certain documents under seal (Dkt. 65) is GRANTED.  Defendants' motion to strike (contained within Dkt. 68) is DENIED.  The M&R (Dkt. 61) is hereby ADOPTED IN PART as outlined above.  Defendants' motion to dismiss (Dkt. 25) is GRANTED IN PART AND DENIED IN PART.  It is GRANTED with regard to GMED's conspiracy and aiding and abetting claims.  The conspiracy claim is DISMISSED and the aiding and abetting claim is DISMISSED WITH PREJUDICE.  The motion to dismiss (Dkt. 25) is otherwise DENIED.  GMED's motion to amend (contained within Dkt. 64) is GRANTED IN PART AND DENIED IN PART.  It is GRANTED with respect to its request to add more factual detail.  It is DENIED with respect to its request to add a party and replead its aiding and abetting claim.

In an effort to effectively manage the court's docket, the court ORDERS that the parties shall not file any more motions under Rule 12 in this case.  The parties may, however, file motions under Rule 56.

Signed at Houston, Texas on October 6, 2016.

Gray H. Miller
United States District Judge

30